JACK DeCLERCK, Plaintiff-Appellee, v. GAYLE SIMPSON *et al.*, Defendants-Appellants.

Fifth District   No. 5—88—0615

Opinion filed June 21, 1990.

CHAPMAN, J., concurring in part and dissenting in part.

Jeffrey C. Taylor and Merry C. Rhoades, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur, for appellants.

Joseph A. Bartholomew, of Cook, Shevlin, Keefe & Ysursa, Ltd., of Belleville, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

This case presents a serpentine legislative and judicial history of the "savings statute." Finding head and tail is difficult, and describing the hunt takes many words.

Initially, plaintiff filed suit against defendants in Federal court for libel and defamation, which he alleged occurred on August 6, 7, 8, and 9, 1986.

Defendants moved to dismiss for lack of personal jurisdiction and improper venue.

The case was dismissed by the Federal court December 14, 1987, on grounds of improper venue.

The motion to dismiss for lack of personal jurisdiction was not addressed.

Less than one year later, on March 30, 1988, plaintiff refiled the defamation case in the circuit court of Christian County, Illinois.

Defendants moved to dismiss, claiming that the one-year statute of limitations for libel actions had passed, barring the case.

Plaintiff claimed that the "savings statute" gave him one year after dismissal from Federal court in which to refile in State court. Ill. Rev. Stat. 1987, ch. 110, par. 13—217 (formerly, Ill. Rev. Stat. 1977, ch. 83, par. 24a).

The circuit court denied the motion to dismiss, certified the question for this court under Supreme Court Rule 308 (107 Ill. 2d R. 308), and we granted leave to appeal.

■ Does the "saving statute" apply to a case that was initially filed in Federal district court but was dismissed because of improper venue? We believe it does.

Section 13—217 of the Code of Civil Procedure in pertinent part reads:

> "§13—217. Reversal or dismissal. In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if *** the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction, then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff *** may commence a new action within one year or within the remaining period of limitations, whichever is greater, *** after the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of juris-

diction." Ill. Rev. Stat. 1987, ch. 110, par. 13—217.

Defendants argue that the statute is clear. It applies only to cases voluntarily dismissed, dismissed for want of prosecution, or dismissed by a United States District Court for lack of jurisdiction. This case, defendants say, was not voluntarily dismissed, dismissed for want of prosecution, or dismissed for lack of jurisdiction. Rather, this case was dismissed for improper venue. Therefore, defendants conclude, the statute does not "save" plaintiff's case from death at the hands of the statute of limitations.

Plaintiff concedes that his case does not fall within the express terms of the statute, but contends that the policy upon which the statute is based supports the circuit court's refusal to use the statute of limitations to kill the case.

We look to the evolution of the statute and to the case law construing it to discern legislative intent.

## ORIGINAL STATUTE

The original statute only applied to cases in which the plaintiff was "nonsuited." Ill. Rev. Stat. 1977, ch. 83, par. 24a.

The supreme court of Illinois, in 1964, was confronted with the question of whether the statute applied to a case that had been dismissed, instead of nonsuited, in Federal court for lack of jurisdiction. (*Roth v. Northern Assurance Co.* (1964), 32 Ill. 2d 40, 203 N.E.2d 415.) In *Roth*, the defendant argued that the statute only saved nonsuits, not dismissals for lack of jurisdiction. The supreme court held that the statute applied, saying:

" 'The act is remedial, reflecting a legislative intent to protect the party who brings the action in good faith from complete loss of relief on the merits merely because of procedural defect. Such remedial statutes should be liberally construed, so as to prevent destruction of the purpose of the legislation. *** In both common law nonsuit and dismissal for want of jurisdiction the order is due to some defect in the procedure or proof which prevents a trial on the merits. The obvious purpose of the statute was to give a plaintiff an opportunity to try the merits and it is illogical to assume that the legislature meant to prevent hardship in the case of a nonsuit, but not in that of dismissal for want of jurisdiction.' " *Roth*, 32 Ill. 2d at 42-43, 203 N.E.2d at 416, quoting *Sachs v. Ohio National Life Insurance Co.* (7th Cir. 1942), 131 F.2d 134, 137.

Following *Roth*'s lead, the Illinois Appellate Court, in *Casillas v. Rosengren* (1967), 86 Ill. App. 2d 139, 229 N.E.2d 141, held that a

dismissal for want of prosecution was covered by the "savings statute," even though the statute's language was limited to nonsuits.

### STATUTE AMENDED

The statute was amended in 1976 in response to the work done by the Illinois Law Review Commission, which had alerted the legislature to the discrepancy between the terminology of the statute and the Civil Practice Act. The discrepancy: the statute used the term "nonsuit"; the Civil Practice Act used the term "voluntary dismissal." (Fins, *The Illinois Law Review Commission*, 29 DePaul L. Rev. 443, 460-61 (1980).) Amended, the statute dropped "nonsuit" and substituted "voluntar[y] dismiss[al]" or "dismiss[al] for want of prosecution." Ill. Rev. Stat. 1977, ch. 83, par. 24a.

In *Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211, the supreme court took an opportunity to use *dictum* to alert the legislature that there was a problem that had been built into the amended statute. Hupp's complaint had been dismissed for lack of jurisdiction. The supreme court pointed out that the original statute saved the case under *Roth*, but that the amended version of the statute, had it applied, would not have saved the case, because the original "nonsuit" language covered dismissals for lack of jurisdiction while the amended "voluntary dismissal" language did not.

The legislature took no action.

The supreme court was given an opportunity to hold what had been *dictum* in *Hupp*. In *Conner v. Copley Press, Inc.* (1984), 99 Ill. 2d 382, 459 N.E.2d 955, the court held that a case dismissed in Federal court for want of jurisdiction was not covered by the amended statute.

The upshot of the evolution of the "savings statute" and *Roth* is this: *Roth* construed the statute to cover all involuntary dismissals, even though "nonsuit" was the only term contained in the statute. *Conner* found that the statute had been amended, dropping "nonsuit" and substituting "voluntary dismissals." Therefore, the legislature had dropped involuntary dismissals from coverage, and substituted voluntary dismissals.

What a change!

*Conner* could only hold that *Roth* had become diseased to the point of death under the evolutionary forces that had been exerted by the changing face of the statute.

Then the legislature acted, and we are brought to this case.

### STATUTE AMENDED A SECOND TIME

Ironically, the statute again was amended in the hiatus between *Hupp* and *Conner*, because "doubts arose regarding the application of [section 13—217] to dismissal by a federal court for lack of jurisdiction."

As the statute now reads, it covers certain types of both voluntary and involuntary dismissals.

This last evolutionary push has struck at *Conner*; it, now, is diseased, withered, and we believe *Conner* no longer is in force.

The question is whether the reasoning of *Roth* applies.

### ROTH REDUX

This history, this evolution, leads us to believe that *Roth*, once diseased, now is returned to health, a *redux*, if you will, at least insofar as the facts of this case are concerned.

*Roth* proceeds by classifying "nonsuit" as involuntary, and then includes thereunder other involuntary dismissals.

In this case, the statute covers dismissal by a Federal court for lack of jurisdiction, also an involuntary dismissal.

Does it cover dismissal for lack of venue, also an involuntary dismissal?

We believe it does, because the legislative history and the courts' treatment lead us to believe that *Roth*'s reasoning is now revived.

The act is remedial, reflecting a legislative intent that this case be saved from the statute of limitations. In the words of Justice Schaefer in *Roth*, "it is illogical to assume that the legislature meant to prevent hardship in the case of a nonsuit, but not in that of dismissal for want of jurisdiction." *Roth*, 32 Ill. 2d at 42, 203 N.E.2d at 416.

■ Substitute "dismissed in Federal court for lack of jurisdiction" in place of "nonsuit," and substitute "lack of venue" for "dismissal for want of jurisdiction." Justice Schaefer's statement then can be read, "it is illogical to assume that the legislature meant to prevent hardship in the case of [dismissal in a Federal court for lack of jurisdiction], but not in that of dismissal for [lack of venue]." That reading does no damage to the fabric of the statute. Statutes apply to cases that fall within the object, spirit and meaning of a statute even though they fall outside the letter. *Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 369 N.E.2d 1279.

· In *Roth*, plaintiff was dismissed for lack of jurisdiction, an involuntary dismissal. The statute applied to "nonsuit," an involuntary dismissal. Therefore, the statute covered the case.

This case was dismissed for improper venue, an involuntary dismissal. The statute applies to cases dismissed for lack of jurisdiction, also an involuntary dismissal. Therefore, the statute covers this case.

It is the involuntariness of the dismissal that places this case and *Roth* in the same class. It is the involuntariness of the dismissal that causes this case to be included in the statute.

We advance one hypothetical in proof of our position. Assume this case had been filed in an Illinois court rather than a Federal court and further assume that a motion attacking venue had been filed and granted. The case would not have been dismissed; it would have been transferred to an Illinois county in which venue would be proper. But in the case at hand, the Federal district court could not transfer to an Illinois court; it could only dismiss. Therefore, the case is most like one filed in Illinois and dismissed for lack of jurisdiction, a case clearly within the reach of the "savings statute."

Furthermore, if there exists no personal jurisdiction in a Federal cause of action, it would follow that there is no venue. (See *Andrews v. Heinold Commodities, Inc.* (7th Cir. 1985), 771 F.2d 184.) Thus, any defendant in the future could forever bar the Federal plaintiff from refiling in an Illinois circuit court by simply filing a motion to dismiss for improper venue in a Federal district court, rather than a motion to dismiss for lack of jurisdiction. The policy of section 13—217 effectively, therefore, would be thwarted by defendant's tactical decision to use an implicit defect in the statute.

■ The maxim *espressio unius est exclusio alterius* is not of universal application and should not be used to defeat the intent of the legislature. (*People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 173 N.E.2d 485.) The legislature is presumed not to have intended an absurdity or injustice. *Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 302 N.E.2d 64.

Defendants also ask us to rule that the plaintiff filed in Federal district court in bad faith, thereby preventing application of the "savings statute" to the facts at hand. See *White v. Tucker* (1977), 53 Ill. App. 3d 862, 369 N.E.2d 90.

■ The circuit court found no bad faith, and we affirm. Plaintiff had a case that involved two States, Illinois and Missouri. Two defendants were Missouri residents, and part of the factual basis of the cause of action took place in a bar in Missouri, while part occurred in Illinois. Under these circumstances, we cannot find bad faith.

Having not the temerity to hope for wisdom, we have pressed for craftsmanship, and in humility and with proper deference to *Roth*

and *Conner*, as well as to the legislature, we affirm the circuit court and remand for further proceedings.

Affirmed and remanded.

WELCH, J., concurs.

JUSTICE CHAPMAN, concurring in part and dissenting in part:

I concur in that portion of the majority's decision which holds that the filing was not in bad faith.

I also agree that the legislature's failure to include dismissals for improper venue as a category within the savings statute may have been because cases entirely within Illinois (or entirely within the Federal system) are transferred rather than dismissed for improper venue. It is only when cases are involved in both systems that a dismissal for improper venue can occur. Finally, I agree with the majority's concern that the basic intent of the savings statute could be frustrated by a defendant's tactical choice of moving for dismissal on venue rather than jurisdictional grounds. I note that there is no evidence of such maneuvering in this case since the defendants' motions allege both jurisdictional and venue bases.

Even though I agree with all of the above, I must dissent for three reasons. First, the wording of the statute is clear and the history of the amendments outlined by the majority makes it even more clear. The dismissals protected by the statute have evolved from the general "nonsuit" which was interpreted by *Roth* to the specific categories discussed in *Conner*. While we may feel that the legislature may have intended to include dismissals for improper venue if it had occurred to them, feelings about what the legislature might have done if it had thought of a particular problem are not a proper basis of statutory construction.

Second, the supreme court in *Roth* was dealing with a general term, "nonsuit," while *Conner* dealt with specific terms such as those contained in the present statute, and *Conner* explicitly stated that the original action must have been dismissed on one of the grounds set forth in the statute:

> "Section 24 thus allows a plaintiff, whose original action has been dismissed on *specified grounds*, to file an action again though the statute of limitations has run. If the dismissal was on one of the *specified grounds*, the statute provides, in effect, a new limitations period which will extend at least one year from the date of the dismissal." (Emphasis added.) *Conner*, 99 Ill. 2d at 385, 459 N.E.2d at 956.

Finally, I completely disagree with that portion of the majority opinion which freely substitutes words in a statute and concludes "That reading does no damage to the fabric of the statute." (200 Ill. App. 3d at 893.) If that reading does no damage, what then would be wrong with substituting any or all of the nine enumerated grounds for dismissal found in section 2—619 of the Code of Civil Procedure and concluding that they too do no damage?

It is a legislative, not a judicial, function to stitch the pieces of the safety jacket together, and it is certainly not a proper judicial function to substitute legs for arms and, in the next breath, to state that the substitution does no damage to the fabric.

For the above reasons I would affirm the trial court's finding of no bad faith, but reverse its holding on the applicability of the savings statute.