E.H. FLESNER *et al.*, Plaintiffs-Appellees, v. YOUNGS DEVELOPMENT COMPANY *et al.*, Defendants-Appellants.

Fifth District   No. 5—89—0531

Opinion filed November 16, 1990.

Richard F. Record, Jr., and Paul R. Lynch, both of Craig & Craig, of Mt. Vernon, for appellants.

John Gadau, of Zimmerly, Gadau, Selin & Otto, of Champaign, and Reino C. Lanto, of Wilson & Lanto, of Rantoul, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiffs initially filed this claim in the United States District Court on May 7, 1981, and it was dismissed on November 12, 1981, for want of jurisdiction. Plaintiffs refiled in the circuit court of Jefferson County, Illinois, on April 22, 1982, and on December 17, 1986, over defendants' objection, the trial court allowed plaintiffs to take a voluntary dismissal.

The present litigation, the third filing against these defendants,

was initiated on December 11, 1987. Defendants' motion to dismiss the claim with prejudice was allowed on October 19, 1988, but the plaintiffs' motion to reconsider based upon this court's decision in *Relaford v. Kyaw* (1988), 173 Ill. App. 3d 1034, 527 N.E.2d 1328, was allowed on July 24, 1989. The trial court included a finding pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308) that the ruling contained in its order involved a question of law as to which there was substantial ground for difference of opinion and that an immediate appeal might materially advance the ultimate termination of the litigation. Defendants' petition for leave to appeal was granted.

Appellant asks this court to overrule its recent decision in *Relaford* and to adopt instead the first district's position which is set forth in the cases of *Walicek v. Ciba-Geigy Corp.* (1987), 155 Ill. App. 3d 667, 508 N.E.2d 246, and *Bernstein v. Gottlieb Memorial Hospital* (1989), 185 Ill. App. 3d 709, 542 N.E.2d 20. For the reasons set forth below, we decline to do so.

■ Before discussing the *Relaford-Bernstein* disagreement, we will address the plaintiffs' contention that the defendants have waived their opportunity to challenge the refiling of this cause by failing to appeal the trial court's order of December 17, 1986, which allowed them to voluntarily dismiss the second filing of this case. The plaintiffs argue that *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 472 N.E.2d 787, recognizes that such an order is final and appealable and that the defendants' failure to appeal from it precludes their raising any challenge to the third refiling of this case. We decline to adopt the plaintiffs' position on this point because to do so could require defendants to appeal from every voluntary dismissal taken by a plaintiff in order to prevent a subsequent refiling. While we have no actual statistics on this point, we are convinced that there are a large number of voluntary dismissals which are never refiled. To adopt the plaintiffs' position would be to cause a grossly inefficient use of legal and judicial resources. A rule which would require appeals in all cases of voluntary dismissals in order to prevent improper refilings in only a few would be neither warranted nor wise. We therefore hold that the defendants have not waived their position by failing to appeal the trial court's December 17, 1986, order.

The substantive issue before this court is whether a plaintiff may refile an action more than one time if the repeated filings are all within the applicable statute of limitations. Defendants' argument proceeds on several fronts. First, defendants contend that the first district's decisions in *Walicek* and *Bernstein*, which held that there could be only one refiling, express a preferable rule and should be followed

in the fifth district. Second, defendants contend that certain statements by the supreme court in *Gendek v. Jehangir* (1988), 119 Ill. 2d 338, 518 N.E.2d 1051, and *Gibellina v. Handley* (1989), 127 Ill. 2d 122, 535 N.E.2d 858, while not controlling on this point, strongly suggest that only one refiling should be allowed. Finally, defendants contend that even if this court does not wish to adopt the *Bernstein* holding and overrule *Relaford, Relaford* should be limited to its facts, which involved a two-year statute of limitations, and should not be extended to a case involving a 10-year statute.

In *Walicek* the first complaint was filed on September 25, 1978, and was dismissed for want of prosecution on May 22, 1980. Plaintiff's second complaint was filed on February 8, 1982, and voluntarily dismissed on March 10, 1983. The statute of limitations for plaintiff's cause of action expired on April 17, 1982. Plaintiff's third complaint was filed on June 6, 1983, and defendants' motion to dismiss the plaintiff's third complaint based on the statute of limitations was denied, but the question involved was certified by the trial court.

The first district stated:

> "Accordingly, in answer to the certified question, we hold that section 13—217 does not allow the filing of a third complaint after the applicable statute of limitations has expired when the first complaint had been dismissed for want of prosecution and the second complaint filed within the statute of limitations was voluntarily dismissed after the statute of limitations expired." (*Walicek*, 155 Ill. App. 3d at 673, 508 N.E.2d at 250.)

While it might be argued that *Walicek* is distinguishable because the statute of limitations had expired before the third complaint was filed, our reading of the case convinces us that the members of the panel of the fifth division of the first district are in agreement with those of the second division, which decided *Bernstein v. Gottlieb Memorial Hospital* (1989), 185 Ill. App. 3d 709, 542 N.E.2d 20. Even if *Walicek* were to be considered distinguishable, *Bernstein* clearly holds that multiple filings within the statute of limitations are not allowed. *Bernstein* and *Walicek* are the only cases that have been cited to us, and that our independent research has disclosed, that resolve the issue in this way. They are obviously not in agreement with this court's decision in *Relaford*.

█ We feel that both *Walicek* and *Bernstein* have misconstrued the purpose of section 13—217 (Ill. Rev. Stat. 1989, ch. 110, par. 13—217) and that their analysis is neither historically accurate nor legally sound. An adequate explanation of our disagreement with the first

district requires a relatively detailed discussion of two statutes: section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1009), which governs voluntary dismissals, and section 13—217 (Ill. Rev. Stat. 1989, ch. 110, par. 13—217), which governs refilings. In examining these statutes the effectuation of the legislature's intent should be foremost, and in achieving this result the following questions should be kept in mind: "What rights did the plaintiff have under the common law? What limitations were imposed on those rights? What relief, if any, is there from those limitations?"

■ At common law the plaintiff had an extremely broad right to take a nonsuit; it could be taken any time before the verdict was rendered in open court. (*Berry v. Savage* (1840), 3 Ill. 261; *Chicago Title & Trust Co. v. County of Cook* (1935), 279 Ill. App. 462.) This right of the plaintiff to avoid an adverse ruling may have been based on some historical precursor that a verdict could not be returned against a plaintiff in his absence and which allowed the plaintiff to take a nonsuit by simply absenting himself from the courtroom (R. Michael, Illinois Practice §42.2, at 340 (1989)), or it may have been a method of allowing a plaintiff to obtain some knowledge of the facts of the case in an aborted trial before the advent of discovery. (*Howe v. Harroun* (1856), 17 Ill. 494; see also Ferrini & Winter, *Voluntary Dismissals—From Shield To Sword By The Convergence Of Improvident Actions*, 21 J. Marshall L. Rev. 549, 551 (1988).) Regardless of the original basis, there is no dispute that the right to take a nonsuit was both absolute and could be exercised at an extremely late stage of the proceedings. *Berry*, 3 Ill. 261.

What limitations were there upon this right of the plaintiff, or to put it another way, what protection was afforded the defendant under those circumstances? The first limitation, or protection, depending upon the point of view, was the applicable statute of limitations. If the plaintiff took a nonsuit, it was necessary to refile the claim within the statute of limitations or the claim would be barred. The protection afforded by the statute of limitations was later supplemented by statutes restricting the time and manner of taking voluntary dismissals.

The first limitation on voluntary nonsuits was enacted in 1819 and provided:

> "Every person desirous of suffering a nonsuit on trial, shall be barred therefrom unless he do so before the jury retire from the bar." (R.L. 486.)

(Gale's Stat. 528. See also *Berry*, 3 Ill. 261; *Daube v. Kuppenheimer* (1916), 272 Ill. 350, 112 N.E. 61.) Subsequent amendments in 1907 and 1933 imposed additional limitations. Section (a) of the present

statute (Ill. Rev. Stat. 1989, ch. 110, par. 2—1009(a)) has been in existence in essentially its present form since 1933. It is extremely important to note that *none* of the statutes which impose limitations on the plaintiff's right to take a nonsuit imposed *any* limitations upon the plaintiff's right to refile a claim. The only such limitation upon the right to refile was the statute of limitations. It should also be noted that the statutory limitations on nonsuits have always been found under the Civil Practice Act/Civil Practice Law provisions.

With this background in mind, the next question needs to be addressed; namely, what relief did the plaintiff have from the imposition of the bar of the statute of limitations? Without the benefit of a savings statute, if the refiling took place *after* the statute of limitations, the plaintiff had none; it was imperative that a nonsuited claim be refiled within the statute of limitations or it was barred.

The next statute to come into consideration is what is commonly called the savings statute and is presently found in section 13—217 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 13—217). The first enactment of the savings statute that our research has disclosed was in 1827. At that time and at all times until its inclusion in the Code of Civil Procedure in 1982, the savings statute remained in the chapter of the statutes which dealt with limitations on the time within which an action could be brought. It was also obviously an exception to the general barring effect of the statute of limitations. The 1827 statute provided:

> "Sec. 9. That if in any of the said actions, specified in any of the preceding sections of this act, judgment be given for the plaintiff, and the same be reversed by writ of error, or upon appeal, or if a verdict pass for the plaintiff, and upon matter alleged in arrest of judgment, the judgment be given against the plaintiff; or if the plaintiff be non-suited, then, *if the time limited for bringing such action shall have expired during the pendency of such suit, the said plaintiff,* his or her heirs, executors or administrators, as the case shall require, *may commence a new action, within one year after such judgment reversed or given against the plaintiff, and not after.*" (Emphasis added.) (Revised Code of Laws of Illinois 1827, *Limitations* §9, at 286 (1827).)

This statute remained essentially unchanged through multiple reenactments over the next 140 years. In 1967 the statute was amended and provided at that time as follows:

> "§24. In the actions specified in this Act or any other act or contract where the time for commencing an action is limited, if

judgment is given for the plaintiff but reversed on appeal; or if there is a verdict for the plaintiff and, upon matter alleged in arrest of judgment, the judgment is given against the plaintiff; or if the plaintiff is nonsuited, or the action is dismissed for want of prosecution then, *whether or not the time limitation for bringing such action expires during the pendency of such suit, the plaintiff,* his heirs, executors or administrators *may commence a new action within one year or within the remaining period of limitation, whichever is greater,* after such judgment is reversed or given against the plaintiff, or after the plaintiff is nonsuited or the action is dismissed for want of prosecution." (Emphasis added.) (Ill. Rev. Stat. 1967, ch. 83, par. 24a.)

It is worthy to note at this time that for at least the first 140 years of its existence, the savings statute, properly examined, was not called into play until the statute of limitations had expired; in other words, there was no adverse consequence from which to save the plaintiff until the statute of limitations had passed. In this regard the savings statute is akin to a life preserver that is usable on only one occasion. If we assume that an ocean liner is stocked with such one-use life preservers (disregarding all potential litigation that might arise from this assumption for the moment), the passengers would still be free to depart and reboard the ship as often as they liked as long as the ship remained attached to the dock. There would be no need to resort to the life preservers until the ship encountered problems at sea.

Similarly, there was no need for a plaintiff to claim a one-time use of the present section 13—217 until the statute of limitations had passed. The early savings statute gave to a plaintiff who had suffered a nonsuit one year after he had been nonsuited in which to commence a new action, but it gave that right only when the time limited for bringing such action had expired *during the pendency* of the suit in which plaintiff was nonsuited. "If at the time of the non-suit there remained unexpired any portion of the time limited for bringing such action, then the provisions of the statute do not apply." (*Wiggins Ferry Co. v. Gardner* (1900), 91 Ill. App. 20, 22; see also *Heimberger v. Elliot Frog & Switch Co.* (1910), 245 Ill. 448, 92 N.E. 297.) "It cannot be seriously contended that the law fixes any limit on the number of successive suits that may be started within the year allowed by the Injuries act." (*Heimberger*, 245 Ill. at 451.) "In this case, it is not necessary for the plaintiff to rely on section 24 to commence the new action since, because of her minority, the time in which her suit might be brought has not expired." *Casillas v. Rosengren*, (1967), 86 Ill.

App. 2d 139, 143, 229 N.E.2d 141, 143.

We will discuss the *Walicek* and *Bernstein* reliance upon the 1967 amendment at a later point in this opinion. At this time we would point out that both of those cases treat sections 2—1009 and 13—217 as though both statutes were passed as limitations upon the plaintiff. This treatment cannot be justified on a historical basis given the divergent means by which both entered the law and the completely different purposes that each was intended to accomplish. The fact that both sections are now found within the body of the Code of Civil Procedure no more suggests that they are both to be construed as limitations upon the plaintiff's rights than does the fact that both a gas pedal and brakes are to be found within the body of an automobile.

One final point on section 13—217 needs to be mentioned. Until 1976 voluntary dismissals were not even included in the protected class of claims that could be refiled after the statute of limitations pursuant to the savings statute. The statute was changed in 1976 to read as follows:

> "§24. In the actions specified in this Act or any other act or contract where the time for commencing an action is limited, if judgment is given for the plaintiff but reversed on appeal; or if there is a verdict for the plaintiff and, upon matter alleged in arrest of judgment, the judgment is given against the plaintiff; or *the action is voluntarily dismissed* by the plaintiff, or the action is dismissed for want of prosecution then, whether or not the time limitation for bringing such action expires during the pendency of such suit, the plaintiff, his heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after such judgment is reversed or given against the plaintiff, or after the action is voluntarily dismissed by the plaintiff or the action is dismissed for want of prosecution." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 83, par. 24a.)

While the term "nonsuit" was used in the earlier statutes, it had been judicially determined to apply to *involuntary* rather than *voluntary* dismissals. *Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211; *Heimberger v. Elliot Frog & Switch Co.* (1910), 245 Ill. 448, 92 N.E. 297; *Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 387 N.E.2d 831; Ferrini & Winter, 21 J. Marshall L. Rev., at 550 (1988).

While this statutory change was not specifically addressed by the parties in this case, it could be argued in support of either of their positions. The plaintiff could argue that the change was the legisla-

ture's first broadening of the plaintiff's rights with regard to voluntary dismissals, which is in contrast to its successive restrictions on the rights that have been covered in our earlier discussion of section 2—1009. The defendant could argue that this change, when coupled with the 1967 language relied upon by *Bernstein* as limiting the plaintiff's rights, indicates a willingness on the part of the legislature to further limit the plaintiff's rights to take a voluntary dismissal and then refile. We are persuaded that the change is actually a neutral one in terms of the issue before us. As Mr. Fins indicates in his article, *The Illinois Law Revision Commission*:

> "*Limitations Act*
>
> In 1976, the Law Revision Commission alerted the legislature to the possibly conflicting terminology in section 24 of the Limitations Act. Prior to 1976, section 24 employed the term 'non-suit' while section 52 of the Civil Practice Act used the term 'voluntary dismissal.' Section 24 was thereafter amended by deleting the words 'non-suit' and incorporating the words 'voluntary dismissal.' " (Fins, *The Illinois Law Revision Commission*, 29 De Paul L.Rev. 443, 460-61 (1979-80).)

The recommendation of the Law Review Revision Commission has been criticized:

> "In other words, the commission substituted the terms 'voluntary dismissal' for 'nonsuit' upon the apparent belief that the term 'nonsuit' necessarily referred to voluntary dismissals. As previously noted, however, the statute had not been so interpreted." (Ferrini & Winter, *Voluntary Dismissals—From Shield To Sword By The Convergence Of Improvident Actions*, 21 J. Marshall L. Rev. 549, 552 (1988).)

The wisdom of the change is not a matter that need concern us in this appeal. We feel it is more likely that the purpose of the change was to obviate what was perceived to be a cosmetic problem and that it has no substantive effect on this issue.

■ Turning to the legal analysis utilized in both *Walicek* and *Bernstein*, each of course relies upon two sources for its holding, prior cases and the applicable statutes. *Walicek* relies upon *Phillips v. Elrod* (1985), 135 Ill. App. 3d 70, 478 N.E.2d 1078; *Smith v. Chicago Transit Authority* (1978), 67 Ill. App. 3d 385, 385 N.E.2d 62; *Harrison v. Woyahn* (7th Cir. 1958), 261 F.2d 412; *LaBarge, Inc. v. Corn Belt Bank* (1981), 101 Ill. App. 3d 741, 428 N.E.2d 711; *Gendek v. Jehangir* (1987), 151 Ill. App. 3d 1028, 503 N.E.2d 1161, *aff'd* (1988), 119 Ill. 2d 338, 518 N.E.2d 1051; and *Kutnick v. Grant* (1976), 65 Ill. 2d 177, 357 N.E.2d 480. *Bernstein* relies upon *Gendek v. Jehangir*

(1988), 119 Ill. 2d 338, 518 N.E.2d 1051; *Tuch v. McMillen* (1988), 167 Ill. App. 3d 747, 521 N.E.2d 1218; *Fanaro v. First National Bank* (1987), 160 Ill. App. 3d 1030, 513 N.E.2d 1041; *Walicek v. Ciba-Geigy Corp.* (1987), 155 Ill. App. 3d 667, 508 N.E.2d 246; *Harrison v. Woyahn* (7th Cir. 1958), 261 F.2d 412; and *Smith v. Chicago Transit Authority* (1978), 67 Ill. App. 3d 385, 385 N.E.2d 62. We will point out that all of the above cases, with the possible exception of *Kutnick*, involved situations in which the statute of limitations had already passed when the plaintiffs attempted to bring their final refiling before the court. Several of the cases relied upon in *Walicek* and *Bernstein* were distinguished on other bases in a dissenting opinion in *Gendek*. (*Gendek*, 151 Ill. App. 3d at 1033, 503 N.E.2d at 1165.) The cases relied upon in *Walicek* and *Bernstein* are not the only ones which involved cases in which the statute had passed and there were multiple filings. The following cases also address that same issue: *Raper v. St. Mary's Hospital* (1989), 181 Ill. App. 3d 379, 536 N.E.2d 1342; *O'Connor v. Ohio Centennial Corp.* (1984), 124 Ill. App. 3d 281, 463 N.E.2d 1376; *Aranda v. Hobart Manufacturing Corp.* (1976), 35 Ill. App. 3d 902, 342 N.E.2d 830, *rev'd* (1977), 66 Ill. 2d 616, 363 N.E.2d 796; *Sandman v. Marshall Field & Co.* (1975), 27 Ill. App. 3d 427, 326 N.E.2d 514; *Brown v. Burdick* (1974), 16 Ill. App. 3d 1071, 307 N.E.2d 409; and *Quirino v. Chicago Tribune-New York News Syndicate, Inc.* (1973), 10 Ill. App. 3d 148, 294 N.E.2d 29. We agree with the holdings in the cases relied upon by *Walicek* and *Bernstein* and with the additional cases that we have listed above, that is to say that the plaintiff may not engage in multiple refilings *after* the statute of limitations has expired. We also agree that section 13—217 was not intended to allow the plaintiff to extend the statute of limitations in one-year increments by successive dismissals and refilings. Once a statute of limitations has passed, the plaintiff is entitled to refile only once and that refiling must take place within one year of the dismissal. In other words, we agree that in order to come within the protection of section 13—217, the plaintiff must comply with the requirements set forth in section 13—217. Our disagreement with the first district arises from our conclusion that section 13—217 is not a further limitation upon the plaintiff's right to voluntarily dismiss. Those limitations are contained in section 2—1009. While section 2—1009 is properly construed as a limitation upon the plaintiff's right to dismiss, section 13—217 cannot be so characterized, for instead of being a limitation on the plaintiff's right, it is an exception to the statute of limitations which restricts those rights.

Turning from the cases to the first district's reliance upon the lan-

guage of the statutes themselves, we find two slightly different approaches taken. In *Walicek* the court holds that adopting the plaintiff's position would render the language *"whether or not the time limitation for bringing such action expires* during the pendency of such action" meaningless. (Emphasis in original.) (*Walicek*, 155 Ill. App. 3d at 672, 508 N.E.2d at 249.) *Bernstein* reaches the same conclusion but buttresses it by comparing the prior language of section 13—217 with the present language, and concluding that the change was intended as a further limitation upon the plaintiff's right to refile. We do not agree with either conclusion.

■■ We do agree with the general proposition that the legislature has a meaning to give to words when it amends a statute. (See *Santiago v. Kusper* (1990), 133 Ill. 2d 318, 329, 549 N.E.2d 1251, 1256.) The earlier provisions of section 13—217, which were contained in section 24(a) (Ill. Rev. Stat. 1965, ch. 83, par. 24(a)), clearly provided that the savings statute applied to situations in which "the time limited for bringing such action shall have expired *during the pendency of such suit"* (emphasis added), while the present section provides that, "whether or not the time limitation for bringing such action expires during the pendency of such suit," the plaintiff may commence a new action (Ill. Rev. Stat. 1989, ch. 110, par. 13—217). At first reading this change may seem to imply a limitation upon the plaintiff's rights. These phrases, however, must be read with the purpose of the statute in mind and in the context of the entire statute. Its purpose, as already discussed, is to act as a savings statute. The additional context which must be considered is that the new language gives the plaintiff *additional* benefits which were not available under the old statute.

To illustrate the effect of the change, assume that a personal injury case was filed shortly after the accident and that the plaintiff dismissed one month before the two-year statute of limitations expired. Under old section 24(a) the plaintiff could refile within that one month before the statute of limitations ran without regard to section 24(a). But, if he attempted to invoke section 24(a) and file after the statute of limitations ran, he would be barred because the time limited for bringing the action did not expire "during the pendency of the suit." (*Dukes v. Harrison & Reidy* (1933), 270 Ill. App. 372.) Therefore, if the plaintiff dismissed shortly before the statute of limitations prior to the amendment characterized as a limitation in *Bernstein*, he would have effectively limited his time period of refiling to the one month remaining under the statute of limitations. After the amendment, however, the plaintiff who dismisses one month before the statute of

limitations expires can still claim the benefit of the savings statute after the statute of limitations has passed, even though the statute of limitations did not expire "during the pendency of the suit." Also, the plaintiff can still claim the remaining period of the statute of limitations or one year from the dismissal "whichever is greater." Thus, the amendment does not constitute an abridgement of the plaintiff's rights, it is an amplification of them.

▪ Defendant also argues that the language "may commence *a new action*" mandates a holding that only *one* refiling is allowed. As we have indicated earlier, we have no quarrel with that proposition if the savings statute is necessary for the plaintiff to be able to refile. We do not by this opinion endorse or approve multiple refilings if the statute of limitations has expired, but we cannot accept the proposition that only one is allowed when the statute of limitations has not expired.

While our discussion is centered on voluntary dismissals because that is what is involved in this case, we would point out that the savings statute also deals with other types of dismissals that do not resolve the merits of the action. These additionally protected dismissals are important in this context because when they occur the plaintiff has no control of the timing of the dismissal. Unlike voluntary dismissals in which the plaintiff controls the timing, any of the other protected categories could have been dismissed just before the statute of limitations had expired and the plaintiff would not have been able to claim section 24(a)'s protection because the statute had not run during the "pendency of the suit."

Our disagreement with *Walicek*'s and *Bernstein*'s construction of the statute arises largely from their insistence that section 24(a) *must* to be utilized before the statute of limitations expires and that it is a statute *limiting* plaintiff's rights. These positions are summarized in the following language, first from *Walicek*, then from *Bernstein*:

> *Walicek*:
> "Plaintiff *availed* himself of section 13—217 after the first dismissal and cannot again, for a second time, avail himself of this section." (Emphasis added.) (*Walicek*, 155 Ill. App. 3d at 672, 508 N.E.2d at 249.)
>
> *Bernstein*:
> "Critical to the holding in *Casillas* was a prior rendering of section 24 which allowed renewal of claims if filed within one year of the contingencies enumerated therein *and* 'if the time limited for bringing such action shall have expired during the pendency of such [*i.e.*, the initial] suit.' [(Emphasis in

original.)] (Ill. Rev. Stat. 1965, ch. 83, par. 24a.) That version of section 24 necessarily required exhaustion of the applicable limitations period before the savings statute *could be invoked,* as contrasted with the current statute, which *limits* the refiling of claims 'whether or not the time limitation for bringing such action expires during the pendency of such action.' " (Emphasis added.) *Bernstein,* 185 Ill. App. 3d at 714, 542 N.E.2d at 24.

In response to these statements, we would state that, contrary to the language in *Walicek,* the plaintiff need not "avail" himself of section 13—217 until after the statute of limitations has expired. As to the emphasized language in *Bernstein,* the phrase "could be invoked" should properly be "had to be invoked" and the word "limits" should be "allows."

While it is inappropriate for courts to expand the provisions of the savings statute beyond what was contemplated by the legislature, given its history and the courts' construction of it (see *DeClerck v. Simpson* (1990), 200 Ill. App. 3d 889, 558 N.E.2d 234 (Chapman, J., dissenting), *appeal allowed* (1990), 133 Ill. 2d 554), it is equally inappropriate for courts to transform the helping hand of the statute into a closed fist. We therefore respectfully decline to follow the reasoning of *Walicek* and *Bernstein.*

We will next discuss the defendant's reliance upon *Gendek v. Jehangir* (1988), 119 Ill. 2d 338, 518 N.E.2d 1051, and *Gibellina v. Handley* (1989), 127 Ill. 2d 122, 535 N.E.2d 858. Interestingly, the *Gendek* decision at the appellate level was cited by *Walicek* and the decision at the supreme court level was cited both by *Bernstein* and *Relaford* in reaching their opposite conclusions. We believe the language in *Gendek* relied upon by *Relaford,* quoted here, reflects the supreme court's actual holding because the statute of limitations had expired in that case:

"Accordingly, we find that the provision was not intended to permit multiple refilings following voluntary dismissals of an action *for which the original statute of limitations has lapsed.*" (Emphasis added.) *Gendek,* 119 Ill. 2d at 343, 518 N.E.2d at 1053.

The defendants also rely heavily upon the supreme court's statement in *Gibellina*:

"While a section 2—1009 motion in conjunction with section 13—217 may protect the right of a plaintiff to have a decision in the particular case made on the merits of the claim by potentially permitting 'two bites of the apple' when the first bite

turns sour, the statutory scheme does not allow a third bite."
(*Gibellina*, 127 Ill. 2d at 134, 535 N.E.2d at 864.)
The plaintiff contends that this statement is *dicta* and that *Gibellina* is
by its terms to be prospectively applied. We agree with the plaintiff's
position, but since this is an issue of some importance that involves dif-
ferent holdings from different appellate districts that the supreme court
may wish to resolve, we will discuss the above language in more detail.

There has been some disagreement among commentators with re-
gard to the effect that the voluntary dismissal provisions have had. (See
Johnston, *The Voluntary Dismissal in Illinois—A Sword or a Shield?*,
21 J. Marshall L. Rev. 537 (1988); Ferrini & Winter, *Voluntary Dis-
missals—From Shield To Sword By The Convergence of Improvident
Actions*, 21 J. Marshall L. Rev. 549 (1988).) Disagreement among com-
mentators has been reflected in a somewhat cyclical treatment in the
cases. The very early cases read the limitations on voluntary dismissals
restrictively and allowed a plaintiff to take a nonsuit at extremely late
stages. (*Berry v. Savage* (1840), 3 Ill. 261; *Howe v. Harroun* (1856), 17
Ill. 494.) During more modern times, however, the courts imposed a
more rigorous interpretation on the statute and sometimes refused to
allow plaintiffs to refile if they were unable to show due diligence.
(*Sandman v. Marshall Field & Co.* (1975), 27 Ill. App. 3d 427, 326
N.E.2d 514, *Brown v. Burdick* (1974), 16 Ill. App. 3d 1071, 307 N.E.2d
409; *Quirino v. Chicago Tribune-New York News Syndicate, Inc.* (1973),
10 Ill. App. 3d 148, 294 N.E.2d 29.) The latter trend was curtailed by
the supreme court's decisions in *Franzese v. Trinko* (1977), 66 Ill. 2d
136, 361 N.E.2d 585, and *Aranda v. Hobart Manufacturing Corp.*
(1976), 35 Ill. App. 3d 902, 363 N.E.2d 796, which affirmed the absolute
nature of plaintiffs' right to voluntarily dismiss.

The next series of cases reflected a more restrictive attitude because
of the supreme court's concern with potential abuses that were occur-
ring. We feel that the earlier quoted statement from *Gibellina* reflects
the supreme court's concern that began with *Kahle v. John Deere Co.*
(1984), 104 Ill. 2d 302, 472 N.E.2d 787, extended through *O'Connell v.
St. Francis Hospital* (1986), 112 Ill. 2d 273, 492 N.E.2d 1322, and cul-
minated in *Gibellina*. The cause of this concern, however, is the im-
proper use of section 2—1009, not the use of section 13—217. Plaintiffs'
efforts to circumvent the effect of *in limine* rulings (*Kahle*), to over-
come their failure to exercise diligence in obtaining service (*O'Connell*),
and their attempts to avoid potentially dispositive rulings on motions
(*Gibellina*) have all been criticized as improper uses of section 2—1009,
but none have anything to do with section 13—217 unless the statute of
limitations has expired.

We recognize that the supreme court included section 13—217 in its critical comment in *Gibellina*. However, as we have indicated, section 13—217 deals with a different problem than those created by improper maneuvering under section 2—1009. The supreme court addressed the problem of late service in *O'Connell* and that of dispositive motions in *Gibellina*.

As a final point on this issue, we pose this question: "How do defendants suffer any detriment by a dismissal and subsequent refilings that occur within the statute of limitations if the dismissal and refiling were not effectuated in an attempt to achieve any of the criticized purposes listed above?" At oral argument counsel for defendants originally suggested that a witness could die or evidence become unavailable during the intervening time, but he then conceded that this can occur in any case at any time before the expiration of the statute of limitations, particularly a relatively long statute such as the 10 years which is apparently at issue in this case. Therefore, defendants would appear to be in at least as good a position to defend themselves, by garnering evidence and conducting discovery in a case that is filed early, and then dismissed and refiled, as they would be in a case that was filed only once near the end of the statute of limitations. As we have indicated, the supreme court has already addressed two of the more serious abuses under section 2—1009 and it additionally suggested further remedies that could be available to defendants in its opinion in *Gibellina*.

In this case there is no claim of lack of diligent service, nor any contention that the plaintiffs were faced with dispositive motions at the time of the dismissals. Indeed, there is no indication of any prejudice to the defendants in this case other than the delay engendered by the dismissals and refilings.

At this time we will briefly dispose of the defendant's final contention that *Relaford* should be limited to its facts, to cases involving a two-year statute of limitations, and not extended to cases involving a 10-year statute. As we have noted earlier, when the statute of limitations affords the plaintiff a certain number of years to initially file a claim, we do not see how a defendant is prejudiced by any filing or refiling that occurs within that period whether the period be two years or 10 years.

In conclusion, we affirm the decision of the trial court.

Affirmed.

RARICK and WELCH, JJ., concur.